Dear Mayor Fontenot:
You have asked me for an opinion on the enforceability of the ordinance that the City of New Iberia is in the process of adopting, levying a 4% excise (franchise) tax on utility businesses operating within the corporate limits of New Iberia. The ordinance provides that the 4% tax is levied unless a franchise agreement provides for a franchise fee in a different amount. This ordinance is similar to one adopted in Baton Rouge several years ago.
As I have indicated in previous discussions, I have been unable to find any reported court decisions that discuss ordinances of this type.
The only Attorney General Opinion that I can ftnd on the subject is Attorney General Opinion 78-1204, which discussed a 10% franchise tax levied by the City of Lafayette. The opinion states that subject to grants and limitations of authority contained in Lafayette's home rule charter, there is no statutory or constitutional limit which a city may not exceed when imposing a franchise tax on a public utility.
New Iberia's legislative charter contains the following provision allowing the City to levy taxes:
Sec. 36. Taxes; power of city to levy and collect.
 The mayor and board of trustees shall have the rights and power to raise money for the needs of the city by imposing and le'ying taxes and licenses upon Mayor Ruth Fontenot all kinds of property, movable and immovable, and all persons, associations of persons, corporations pursuing any trade, profession, business or calling, except such as may be exempt from taxation and license under the constitution of this state which said taxes shall be payable at the office of city tax collector from the first day of January to the first day of September of each year: and in cases of licenses, they shall be payable from Ihe date provided for under ordinances, and the mayor and board of trustees shall provide the method of enforcing the collection of such taxes and licenses pursuant to the requirements of the state constitution and laws.
 I conclude that New Iberia has the authority to adopt such a tax.
You have also asked whether or not this tax would be fully applicable to a utility business that serves an area recently incorporated into the City by annexation, where the utility operated within that area prior to annexation, under a franchise agreement (that did not provide for a franchise fee) granted by the Parish of Iberia, It has been suggested that this tax would be applicable to revenues from customers first served after the annexation, but not applicable to customers served prior to annexation. I believe that this is correct. There are no reported cases dealing with the tax issue, but there are several court decisions that hold that where a utility has a franchise granted by a parish governing authority, the franchise is a property right of the utility, and after annexation that utility cannot be prevented from continuing to serve the customers that it served prior to annexation, On the other hand, the utility may be prevented from serving new customers within the annexed area without a franchise agreement. (See Valley Electric MembershipCorporation v. Southwestern Electric Power Company, 550 So.2d 702
(La.App. 2nd Cir., 1989), writ denied 551 So.2d 1341 and 551 So.2d 1342 (La. 1989) and Town of Coushatta v. Valley Electic Membership Corporation,139 So.2d 822 (La.App. 2nd Cir., 1962). Although these cases do not deal with the tax issue, I think that a municipality's right to impose a tax would be subject to the same limitations as a municipality's right to require a franchise agreement.
We have also discussed a situation in which a utility served an unincorporated area of Theria Parish without having any franchise agreement from the Parish, and that area is later annexed into the City. In that situation, the City would have the right to require a franchise agreement, or impose a franchise tax, even as to those City customers served by the utility prior to the annexation.
Of course, any utility that has a franchise agreement with the City would pay the franchise fee percentage provided in that agreement.
I understand that you will forward this opinion to the Attorney General's office for review. Please feel free to contact me, or have the Attorney General's office contact me, concerning any issues discussed here.
Sincerely,
_________________ SIMON AND SIMON
JJS/abs cc: Members of the Board of Trustees